IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

# FILED

November 01, 2022 10:55 AM
ST-2022-CV-00090
TAMARA CHARLES
CLERK OF THE COURT



**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **THEODORE R. NEWMAN, JR.,** | ) |
| | ) CASE NO. ST-2022-CV-00090 |
| Plaintiff, | ) |
| | ) ACTION FOR DECLARATORY |
| v. | ) RELIEF, BREACH OF FIDUCIARY |
| | ) DUTY, BREACH OF CONTRACT, |
| **BOARD OF DIRECTORS OF SAPPHIRE BAY** | ) BREACH OF GOOD FAITH AND |
| **WEST CONDOMINIUM ASSOCIATION,** | ) FAIR DEALING, AND INJUNCTIVE |
| **through its president, John Brasile,** | ) RELIEF |
| | ) |
| Defendant. | ) |

Cite as: 2022 VI Super 90U

## MEMORANDUM OPINION AND ORDER

¶1 Pending before the Court are:

1. Defendant's Motion to Dismiss and Compel Arbitration and Memorandum of Law in Support Thereof, filed on April 21, 2022;

2. Plaintiff's Opposition to Defendant's Motion to Dismiss and Compel Arbitration, filed on May 12, 2022;

3. Defendant's Reply in Further Support of Its Motion to Dismiss and Compel Arbitration and Incorporated Memorandum of Law in Support Thereof, filed on July 8, 2022; and

4. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Stay Discovery, filed on July 19, 2022.

### I.     FACTUAL AND PROCEDURAL BACKGROUND.

¶2     The Plaintiff, Theodore R. Newman, Jr., is the owner of a condominium unit at Sapphire Bay West (the "Property"). Newman brought the instant action alleging that:

1. The By-Laws of Sapphire Bay Condominiums West[1] (SBCW) require that improvements costing in excess of $50,000.00 must be approved by at least two-thirds (2/3) or seventy-five condominium units and that the Board of Directors ("BOD") is only authorized to

---

[1] Since at least 1990 the recorded official By Laws, including amended By-Laws have identified the name of the condominium as Sapphire Bay Condominiums West and not Sapphire Bay West Condominium as stated in the caption and the body of Plaintiff's Verified Complaint. The Court will utilize the name stated in the recorded By-Laws.

make expenditures in excess of $50,000.00 upon a vote and appropriate approval of the association membership.

2. After hurricanes Irma and Maria hit St. Thomas in September 2017, SBCW received an insurance settlement in relation to hurricane damage to the Property.

3. The insurance settlement is owned by all members of SBCW and does not belong to the BOD.

4. After September 2017, the BOD mismanaged association finances by failing to properly vet and supervise the contractor hired to repair/replace the condominium's roofs. The contractor hired to carry out the Roof Replacement Contract did not complete the project, multiple construction liens were filed against SBWC and two lawsuits were filed against SBWC.

5. At the March 20, 2021 annual meeting the BOD represented that it had a proposal from H&W Construction to replace windows, stairs, doors and sidewalls at SBCW for the sum of $3.1 million.

6. Despite repeated requests, SBCW refused to furnish H&W's proposal.

7. At the time of the March 20, 2021 annual meeting, the BOD acknowledged that ownership needed to be involved in the decision-making process for the "proposed (but still yet undefined) improvements to the Property."[2]

8. At the March 1, 2022 meeting, the BOD stated that it "does not need to have the approval of the ownership to sign the contract to proceed with a proposed improvement project (the 'Improvement Project') which, upon information and belief, is to include replacement of all stairways, removal and replacement of the front facades of all buildings, removal and replacement of all windows and doors."[3]

9. The expected cost of the Improvement Project is over $3 million.

10. "There is no emergency condition that requires the Improvement Project be undertaken without proper approval of the association membership."[4]

---

[2] Pl.'s Ver. Compl. ¶ 20.
[3] Pl.'s Ver. Compl. ¶ 25.
[4] Pl.'s Ver. Compl. ¶ 27.

11. The BOD refused to provide names of contractors who have been asked to provide bids and has refused to provide the bid package and/or scope of work that is presumably being provided to all contractors.

12. The "SBCW has failed or refused to address the issues of repeated wrongful conduct by SBCW and the purported 'Board of Directors' by:

    a. Refusing to follow the By-Laws by properly putting matters for discussion and voting by the membership of SBCW;
    b. Refusing to provide information to the membership of SBCW as required by the fiduciary duties imposed on the members of the BOD;
    c. Hiding or destroying evidence of meeting of SBCE members, and in some instances altering the minutes of the meetings to falsely represent the meetings."[5]

13. Individuals within SBCW have sought to undermine Plaintiff's grievances and "undertook a concerted campaign to violate the By-Laws of SBCW."[6]

¶3    Count 1 of the Verified Complaint seeks an order or judgment declaring that: (a) the SBCW is required to obtain an affirmative vote of at least 75 of the apartment owners to conduct any projects costing in excess of $50,000.00; and (b) "[a]ll individual members of SBCW BOD may be liable in their personal capacities for violation of the By-Laws of SBCW."[7]

¶4    Count 2 of the Verified Complaint alleges breach of fiduciary duty by the BOD based upon its actions or inactions as alleged above.

¶5    Count 3 of the Verified Complaint alleges Breach of Contract based upon the BOD's failure to comply with the By-Laws.

¶6    Count 4 of the Verified Complaint alleges Breach of Good Faith and Fair Dealing based upon the BOD's engagement in fraudulent and deceitful conduct.

¶7    Count 5 of the Verified Complaint seeks injunctive relief or remedy in the form of "an order which requires the BOD to immediately cease and desist from entering into any contracts costing in excess of $50,000.00, including a contract for the Improvement Project, without obtaining an affirmative vote representing 75 units; requiring the BOD to supply information to the association as requested by the membership; requiring the BOD to comply with the By-Laws moving forward."[8]

---

[5] Pl.'s Ver. Compl. ¶ 39.
[6] Pl.'s Ver. Compl. ¶ 40.
[7] Pl.'s Ver. Compl. ¶ 46.
[8] Pl.'s Ver. Compl. ¶ 77.

¶8 In response to Newman's Verified Complaint, the BOD filed a Motion to Dismiss and Compel Arbitration based on the SBCW's By-Laws, as amended on March 20, 2021, which provide at Article II, Section 16:

> If informal discussion of any disputes between a unit owner and the Board which shall fail to resolve the controversy, the issue shall referred to arbitration, American Arbitration Association rules shall be observed. Each party shall select one arbitrator who shall agree upon a third arbitrator to be selected. The place of arbitration shall be St. Thomas unless an alternative place is agreed upon by both parties to the controversy. The resolution reach [sic] through arbitration shall be binding and not subject to review.[9]

¶9 The BOD's position is that the foregoing section of the By-Laws requires that any owner, such as Newman, arbitrate any dispute he may have with the Board should informal discussions fail to resolve the matter.[10] The BOD points out that the 2010 By-Laws, which are attached to Newman's Verified Complaint as Exhibit 1, contain the same arbitration clause. Indeed, the By-Laws of SBCW, as amended September 26, 2010, and attached as Exhibit 1 to the Verified Complaint state at Article II, Section 16:

> If informal discussion of any disputes between a unit owner and the Board which shall fail to resolve the controversy, the issue shall [be] referred to arbitration, American Arbitration Association rules shall be observed. Each party shall select one arbitrator who shall agree upon a third arbitrator to be selected. The place of arbitration shall be St. Thomas unless an alternative place is agreed upon by both parties to the controversy.

¶10 The BOD further argues that: (1) Virgin Islands law favors arbitration; (2) both sets of By Laws require that condominium unit owners arbitrate any dispute with the BOD; (3) both the By Laws relied upon by Newman and the most recently amended By-Laws require him to submit his claims to arbitration; and (4) the economic activities of the SBCW demonstrate a nexus to interstate commerce.

¶11 In opposing arbitration, Newman argues that: (1) the BOD's Motion is procedurally improper and the Court should be permitted to interpret the language and/or determine arbitrability; (2) judicial interpretation of a contract is not covered by the arbitration clause; (3) his Complaint seeks judicial interpretation of the language of the By-Laws which is not a dispute between a unit owner and the BOD; (4) the arbitration clause neither addresses who determines arbitrability "nor does it explicitly bar a court from determining arbitrability"[11]; (5) there is no interstate nexus in the By-Laws as they deal exclusively with real property, the BOD and Plaintiff are all located on St. Thomas, and the BOD and the plaintiff are all exclusively *intra*state; (6)

---

[9] Def.'s Mot. to Dismiss & Compel Arb. Ex B. (in the By Laws there is a footnote to Section 16 which states that this section was amended March 6, 2016.

[10] Def.'s Mot. to Dismiss & Compel Arb. 2

[11] Pl.'s Opp. to Def.'s Mot. to Dismiss & Compel Arb. 3.

SBCW deliberately concealed the arbitration clause in the By-Laws; (7) there is no arbitration clause in Article III of the By-Laws titled Unit Owners and, therefore, Unit Owners are not required to submit to arbitration, only the BOD, because the arbitration clause located in Article II pertains to the Board of Directors; (8) the By Laws' table of contents is misleading and arbitration is omitted from the table of contents; (9) the table of contents contains a phantom arbitration clause referencing a page number which does not exist thereby leading one to reasonably conclude that the entire Article XI "Arbitration" section had been intentionally deleted; (10) the BOD is responsible for the language in the By Laws and because was the party with the excessive bargaining power, the By Laws were presented to unit owners on a "take-it-or-leave-it basis"[12] and therefore that language it the typographical errors in the By Laws should be construed against the BOD; (11) the arbitration clause is unconscionable; (12) the hidden arbitration clause constitutes fraudulent concealment; (13) the arbitration clause is unenforceable because it prohibits judicial review; and (15) the arbitration clause fails to articulate a procedure for, inter alia, who determines arbitrability.

## II. APPLICABLE LEGAL STANDARD FOR A MOTION TO COMPEL ARBITRATION.

¶12      "The Federal Arbitration Act ("FAA") states that '[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.'"[13] While the Supreme Court of the Virgin Islands has previously expressed reservations concerning the applicability of the FAA to disputes in the Virgin Islands, it has held that the "FAA is a legislation which plainly states that it applies to the Virgin Islands . . . [and] may very well apply to the territory by way of the Territorial Clause."[14]

¶13      When ruling on a motion to compel arbitration under the FAA, the Court need not consider the merits of the underlying claims.[15] Rather, the "primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms."[16] "Courts have long recognized that arbitration is a creature of contract and litigants may contract to resolve their disputes through arbitration."[17] In determining whether a dispute may be arbitrated, the Court must follow a two-step analysis: (1) whether an arbitration provision is present in a valid contract; and (2) whether the particular dispute falls within the scope of that agreement.[18] Only when a

---

[12] Pl.'s Opp. to Def.'s Mot. to Dismiss & Compel Arb. 34.
[13] *Daniel v. Treasure Bay Virgin Islands Corp.*, Super. Ct. Civ. No. SX-10-CV-206, 2015 WL 13579174, at * 1 (V.I. Super. Ct. May 14, 2015) (unpublished) ("This Court may enforce arbitration agreements pursuant to the Act.").
[14] *Whyte v. Bockino*, 69 V.I. 749, 759-760 (V.I. 2018) (citations omitted).
[15] *Id; Daniel v. Treasure Bay VI Corp.*, 62 V.I. 423, 425-426 (V. I. Super. Ct. 2015) (collecting cases).
[16] *Id.*
[17] *Valentin v. Grapetree Shores*, Super. Ct. Civ. No. SX-11-CV-305, 2015 WL 13579631, at * 2.
[18] *Whyte* at *2.

defendant demonstrates that the pending dispute is arbitrable, does the burden shift to plaintiff to establish that the arbitration clause should not be enforced.[19]

## A. An arbitration provision is present in SBWC's By-Laws.

¶14    In addressing the Defendant's Motion to Compel Arbitration, the Court must first determine whether an arbitration provision is present in a valid contract, or in this case, the condominium's by-laws. Exhibit 1, which was filed with Plaintiff's Verified Complaint, is entitled:

BY LAWS
As amended
September 26, 2010
Unofficial copy of the bylaws July 2012

¶15    The Defendant has attached as Exhibit B to its Motion to Dismiss and Compel Arbitration the following: (1) a Certificate of Amendment to Condominium By Laws of Sapphire Bay Condominiums West and (2) Sapphire Bay Condominiums West By Laws As Amended March 20, 2021. Both the Certificate of Amendment and attached amended By Laws were recorded in the Official Records of the St. Thomas/St. John Recorder of Deeds on May 11, 2021.

¶16    Both the unofficial copy of the By Laws relied upon by the Plaintiff and the official copy of the By Laws amended March 20, 2021 contain the following identical language:

> If informal discussion or any disputes between a unit owner and the Board which shall fail to resolve the controversy, the issue shall [be] referred to arbitration, American Arbitration Association rules shall be observed. Each party shall select one arbitrator who shall agree upon a third arbitrator to be selected. The place of arbitration shall be St. Thomas unless an alternative place is agreed upon by both parties to the controversy.

¶17    The only difference is that the official By Laws which were amended on March 20, 2021, contain the following sentence at the end of the Article II, Section 16: "The resolution reach [sic] through arbitration shall be binding and not subject to review."

¶18    The Court finds that whether the unofficial By Laws relied upon by the Plaintiff or the official amended By Laws are applied, there exists an arbitration provision in the By Laws.

---

[19] *Valentin* at * 4.

## B. The disputes articulated in Plaintiff's Complaint fall within the scope of the SBWC's By Laws' arbitration clause.

¶19     As pointed out by the BOD, the very existence of the instant lawsuit is evidence of disputes or disagreements between the Plaintiff and the BOD. A dispute is "[a] conflict or controversy, [especially] one that has given rise to a particular lawsuit."[20] Plaintiff argues that the issues at hand center on the interpretation of the By Laws and not a dispute between a unit owner and the BOD. Having reviewed the Verified Complaint, the Court disagrees with Plaintiff's characterization of the basis for his causes of action and relief or remedies being sought. The Verified Complaint and Declarations of John Brasile and Christian Pedini identify numerous areas of conflict, controversy or disagreement between Plaintiff and the BOD and SBCW, namely:

1. The BOD failed to comply with the By Laws by entering into a contract for improvements to the SBCW property in excess of $3 million when the By Laws require 2/3rds of the unit owners to approve improvements in excess of $50,000.00;

2. Despite repeated requests therefor, the BOD has refused to provide to Plaintiff the proposal from H&W Construction to replace windows, stairs, doors and sidewalls ("Improvement Project') at SBCW for the sum of $3.1 million;

3. There is no emergency condition that requires the Improvement Project be undertaken without proper approval of the association membership;

4. The BOD refused to provide names of contractors who have been asked to provide bids and has refused to provide the bid package and/or scope of work that is presumably being provided to all contractors.

5. SBCW has failed or refused to address the issues of repeated wrongful conduct by SBCW and the purported Board of Directors by:

    (a) Refusing to follow the By-Laws by properly putting matters for discussion and voting by the membership of SBCW;

    (b) Refusing to provide information to the membership of SBCW as required by the fiduciary duties imposed on the members of the BOD;

    (c) Hiding or destroying evidence of meeting of SBCE members, and in some instances altering the minutes of the meetings to falsely represent the meetings; and

---

[20] BLACK'S LAW DICTIONARY (11th ed. 2019).

6. Individuals within SBCW have sought to undermine Plaintiff's grievance and undertook a concerted campaign to violate the By-Laws of SBCW.

¶20    As a way of avoiding the arbitration clause in the By-Laws, Plaintiff argues that the instant action seeks judicial interpretation of the language of the By-Laws. This argument is not supported by the Verified Complaint and Declarations of John Brasile and Christian Pedini. Rather, due to his grievances, disputes and disagreements with the BOD, Plaintiff seeks several forms of relief or remedies which include a declaration of the rights or the rights and legal relations between Plaintiff and SBCW and BOD. "A declaratory judgment is a statutory remedy for the determination of a justiciable controversy where the plaintiff is in doubt as to [its] legal rights."[21] "[D]eclaratory judgment is only permissible where a justiciable controversy exists."[22] The controversy at issue must be "definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[23] In short, by setting forth the necessary allegations to show that he is entitled to the remedy of declaratory judgment, the Plaintiff has also detailed the existence of real and substantial controversy—in other words, the existence of a dispute.

¶21    The Court finds that the allegations set forth in Plaintiff's Verified Complaint constitute disputes between a unit owner and the BOD. Further, the Court finds that the BOD has met its burden that arbitrable disputes exist in relation to the Plaintiff.

¶22    Although it may not comport with all the rules of grammar, the Court finds that the arbitration clause in Article II, Section 16 is clear and unambiguous. Condominium by-laws, like corporate by-laws, are to be construed according to the rules used to interpret statutes, contracts, and other written instruments."[24] Therefore, SBCW's By-Laws will be "construed according to their plain meaning and within the context of the document as a whole."[25]

---

[21] *Hill v. DeJongh,* Civil No. ST–10–CV–585, 2012 V.I. LEXIS 11, at *13 (V.I. Super. Ct. Apr. 19, 2012) (citing *Tip Top Construction v. Department of Property & Procurement,* 41 V.I. 72, 78 (V.I. Super. Ct. 1999)).
[22] *Walsh v. Daly,* Case No. ST–01–CV–165, 2014 V.I. LEXIS 36, at *28 (V.I. Super. Ct. June 18, 2014) (citing *Companion Assurance Co. v. Alliance Assurance Co., Ltd.,* 585 F.Supp. 1382, 1384–85 (D.V.I. 1984)). *See also Pate v. Government of the Virgin Islands,* Case No. ST–14–CV–479, 2014 V.I. LEXIS 112, *10–11 (V.I. Super. Ct. Dec. 11, 2014) (observing that, "[a]lthough the decision to entertain a declaratory action is within the discretion of the Court, the matter must involve an actual and justiciable controversy").
[23] *Luis v. Dennis,* 751 F.2d 604, 607 (3d Cir. 1984) (citing *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240–41 (1937)).
[24] *Weary v. Long Reef Condominium Association,* 57 V.I. 163, 170 (V.I. 2012) (citing *Singh v. Singh,* 9 Cal Rptr.3D 4, 27-28 (Cal Ct.App.2004)); *Mabe v. Bd. of Directors of Mahogany Run Condo. Ass'n, Inc.,* 2022 VI SUPER 34U, ¶ 5.
[25] *Id.* (citing *Isaacs v. American Iron & Steel Co.,* 690 N.W.2d 373, 376 (Minn.Ct.App.2004).

### C. There were informal discussions of the disputes or disagreements between the BOD and Plaintiff and other unit owners which failed to resolve the controversy or disagreements among them.

¶23 According to John Brasile, a unit owner and former president of SBWC, a few owners, including Plaintiff, disputed the need for post September 2017 hurricane repairs and claimed that the BOD "may not proceed with this project unless there is a two-thirds of owner vote to approve the project."[26] While Brasile was president, "the Association convened meetings of owners on a regular basis, generally every month, to field complaints and discuss issues of interest with the owners, including the repair project."[27] In addition,

> [a]t these meetings, Michael Sheesley, who is also an owner of a unit at the Condominium, and a few other owners, have stated their objections to proceeding with the repair project without the approval of two-thirds of owners. The other board members and I have attempted to respond to and resolve their objections, to no avail.[28]

¶24 Finally, Brasile states that "the objections of Attorney Sheesley and other owners to [the] repair project have been discussed over and over again over the course of several meetings."[29] The foregoing efforts to informally discuss any disputes between unit owners and the BOD, which failed to resolve the controversy, clearly establish to the Court's satisfaction that: (1) there were informal discussions of disputes regarding the need for post September 2017 hurricane repairs; (2) that the disputes were between Plaintiff and other unit owners and the BOD and; (3) by the very allegations of the Verified Complaint, the meetings failed to resolve the controversies.

### D. The requirement of an interstate nexus is a low bar which has been met in the instant case.

¶25 The burden of demonstrating that an interstate nexus exists in on the party seeking to compel arbitration.[30] The burden is a relatively low one.[31] The parties' contract need only affect interstate commence "such as where the economic activities of at least one of the parties demonstrate a nexus to interstate commerce."[32]

¶26 The Declaration of Christian Pedini, President of SBWC, submitted in support of Defendant's Reply to Opposition to Motion to Dismiss and Compel Arbitration states:

---

[26] Dec. of John Brasile ¶ 4.
[27] Dec. of John Brasile ¶ 5.
[28] Dec. of John Brasile ¶ 6.
[29] Dec. of John Brasile ¶ 7.
[30] *Johnston v. St. Croix Fin. Ctr., Inc.*, 2019 VI SUPER 133U, ¶ 14 (citing *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003)).
[31] *Id.*
[32] *Id.*

> We have owners who are from New York, New Jersey, and many other states. I reside in California, while the immediate past president resides in Connecticut – other board members live throughout the U.S. mainland.[33]

> Further, several owners manage the rental of their units from their residences on the U.S mainland. Our meetings of owners and board members are conducted by Zoom, and most of the participants attend from locations on the U.S. mainland. Our Association's budget is funded by checks and other forms of payment sent by owners from their respective stateside residences to the U.S. Virgin Islands.[34]

> In addition, our repair project requires the Association to ship materials into the Virgin Islands and pay stateside vendors directly for those materials.[35]

¶27    Unit owner, Brasile, who was the president of SBCW for two years ending on April 30, 2022, stated the following with respect to the interstate nexus factor:

> In addition, our repair project requires the Association to ship materials into the Virgin Islands from stateside locations and to pay stateside vendors directly for those materials. To cite only one example, the stairs that will be installed as part of this project will be fabricated in Alabama, assembled in Florida, and shipped to the U. S. Virgin Islands by a Florida vendor.[36]

¶28    Based upon the Declarations of Pedini and Brasile, the Court finds that the operations of the BOD and SBCW in accordance with the By Laws affect interstate commerce which demonstrate a nexus to interstate commerce.[37] Therefore, an interstate nexus sufficient to trigger application of the FAA exists.[38]

## III.    THE PLAINTIFF HAS FAILED TO MEET HIS BURDEN THAT THE ARBITRATION CLAUSE SHOULD NOT BE ENFORCED.

¶29    The Plaintiff raises several arguments against enforcement of the arbitration clause. First, Plaintiff argues that the BOD should not benefit from the "misleading, convoluted, and fraudulent language in the Bylaws, which defendant knew or should have known would conceal the arbitration clause from anyone reading the Bylaws."[39]

### A. Presumption of arbitration does not disappears when arbitration clause disputed.

¶30    Without any binding legal authority for his position, Plaintiff argues that "[t]he parties here dispute the existence of a valid arbitration agreement" and that the "presumption in favor of

---

[33] Dec. of Christian Pedini in Support of Def.'s Reply to Opp. to Mot. to Dismiss & Compel Arb. ¶ 9.
[34] Dec. of Christian Pedini in Support of Def.'s Reply to Opp. to Mot. to Dismiss & Compel Arb. ¶ 10.
[35] Dec. of Christian Pedini in Support of Def.'s Reply to Opp. to Mot. to Dismiss & Compel Arb. ¶ 11
[36] Dec. of John Brasile in Support of Def.'s Reply to Opp. to Mot. to Dismiss & Compel Arb. ¶ 11.
[37] *Johnston v. St. Croix Fin. Ctr., Inc.*, 2019 VI SUPER 133U, ¶ 14.
[38] *Whyte v. Bockino*, 69 V.I. 749, 753 (2018).
[39] Pl.'s Opp. to Def.'s Mot. to Dismiss & Compel Arb. 16.

arbitration disappears when the parties dispute the existence of a valid arbitration agreement."[40] A single plaintiff disputes the existed and application of the arbitration clause in SBCW's By-Laws. This Court has determined that there is a valid, enforceable, clear and unambiguous arbitration clause in the SBCW By-Laws and it has not "disappeared" but is clearly subject to application and enforcement.

¶31    The authority provided by the Plaintiff for the proposition that the arbitration clause "disappeared" involved the following: (1) how courts should review certain matters under the federal Arbitration Act, how a district court should review an arbitrator's decision that the parties agreed to arbitrate a dispute, and how a court of appeals should review a district court's decision confirming, or refusing to vacate, an arbitration[41]; (2) whether an illiterate borrower had been fraudulently induced by lender's agent to sign stand-alone arbitration agreements in connection with loans and accompanying insurance contracts was outside the scope of those arbitration agreements[42]; (3) an employee handbook which permitted the employer to unilaterally alter, modify, change, etc., any provision of the handbook rendered the agreement to arbitrate illusory;[43] and (4) an agreement between an employer and an employee to arbitrate employment-related disputes does not bar the EEOC from pursuing victim-specific judicial relief, such as backpay, reinstatement, and damages, in an ADA enforcement action.[44] In short, the cases provided by Plaintiff in support of his position are factually distinguishable and non-binding.

¶32    Contrary to Plaintiff's argument, this Court finds, as explained above, that the arbitration provision in the By Laws is clear and unambiguous, and the fact that Plaintiff has contested the existence of a valid arbitration agreement does not result in the provision being non-existent.

### B. Tort claims such as breach of fiduciary duty are arbitrable in this jurisdiction.

¶33    Plaintiff argues that tort claims, such as his claim for breach of fiduciary duty, are not arbitrable based upon what "some courts" have held. Observing that the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms, the Supreme Court of the Virgin Islands has upheld arbitration of a tort claim of negligence based upon a dispute resolution provision in an employment agreement.[45] In the instant case, the SBWC's By-Laws state that **any** dispute between a unit owner and the BOD is subject to

---

[40] Pl.'s Opp. to Def.'s Mot. to Dismiss 9.

[41] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 940 (1995).

[42] *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533 (5th Cir. 2003).

[43] *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1218 (10th Cir. 2002).

[44] *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002).

[45] *Allen v. Hovensa*, 59 V.I. 430, 439 (V.I. 2013) citing *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)); *Uyen Le v. Treasure Bay VI Corp.*, Super. Ct. Civ. No. SX-2016-CV-316, 2017 WL 785873 (V.I. Super. Ct. Feb. 27, 2017) (Plaintiff bound by terms of membership agreement to submit her tort claim to arbitration); *Valentin v. Grapetree Shores*, Super. Ct. Civ. No. SX-11-CV-305, 2015 WL 13579631 *5 (V.I. Super. Ct. June 30, 2015); *Farrell v. Grapetree Shores, Inc.* 2019 VI SUPER 130U (Super. Ct. Oct. 25, 2019) (valid arbitration agreement encompassed plaintiff's tort claim).

arbitration. By virtue of the language of the By-Laws and numerous cases cited herein, Plaintiff's claim of breach of fiduciary duty is subject to arbitration.

### C. Language and typographical errors in the By Laws cannot be construed against the BOD.

¶34    Plaintiff next argues that the typographical and scrivener's errors in the By Laws must be construed to the benefit of the non-drafter of the By-Laws, i.e., the BOD. However, this argument fails because: (1) there is no evidence that the By-Laws were drafted by the BOD (given the procedure required by the statute to create a condominium development and association, the original By-Laws predate the current Board of Directors; and (2) amendments to the By-Laws are by vote of 66 2/3% (75 apartments) of unit owners present in person or by proxy and voting at a meeting of unit owners held for such purpose."[46]

### D. SBCW's By Laws do not constitute an unenforceable contract of adhesion and the arbitration clause is not unconscionable.

¶35    Generally, a contract or provision thereof is procedurally unconscionable if it constitutes a contract of adhesion."[47] "A contact of adhesion is one prepared by the party with excessive bargaining power and presented to the other party on a take-it-or-leave-it basis."[48] The burden is on Plaintiff to prevail on his unconscionability claim:

> Unconscionability encompasses both procedural and substantive unconscionability, and the party seeking to invalidate a contract on this basis bears the burden of showing both. Procedural unconscionability may exist, for example, with a contract of adhesion—where one party has no meaningful choice regarding acceptance—or, where the contract drafter obfuscates terms with convoluted or unclear language.[49]

¶36    The By-Laws in question involve a condominium association and respective condominium unit owners. There is no evidence that the Plaintiff was forced to purchase a condominium unit. Rather, unit owners, such as the Plaintiff, freely chose to purchase a unit and agreed to be bound by the Declarations and By-Laws.[50] SBCW's By-Laws were not presented to the Plaintiff and purchasers of other condominium units on a take-it-or-leave it basis. Therefore, SBWC's By-Laws are not an unenforceable contract of adhesion.

---

[46] Def.'s Reply in Further Support of Its Mot. to Dismiss & Compel Arb. & Inc. Memo. of Law in Support Thereof 6 and Def.'s Mot. to Dismiss & Compel Arb. & Mem. of Law in Support Thereof Ex. B.

[47] *Moore v. Hovensa, LLC*, 47 V.I. 104, 107 (V.I. Super. June 22, 2005) (internal citations omitted).

[48] *Id.* at 107 (citation omitted); *Williams v. Groundwater & Envtl. Servs. Inc.*, Super. Ct. Civ. No. SX-18-CV-552, 2020 WL 814414, at *3 (V.I. Super. Jan. 8, 2020).

[49] *Valentin v. Grapetree Shores*, Super. Ct. Civ. No. SX-11-CV-305, 2015 WL 13579631 *5 (V.I. Super. Ct. June 30, 2015) quoting *Browne v. Acuren Inspection, Inc.*, 2014 WL 1308838, *2, 2014 U.S. Dist. LEXIS 43965, *4–5 (D.V.I. Mar. 31, 2014).

[50] *Universal N. Am. Ins. Co. v. Bridgepointe Condo. Ass'n, Inc.*, 195 A.3d 543, 552 (N. J. Super. 2018).

¶37    Another reason why the By-Laws are not a contract of adhesion is that amendments to the By-Laws are voted on by members of the SBCW. The BOD argues that the Plaintiff has been on notice of any provisions in the By Laws since he became a unit owner in 1991 and his deed specifically provides that the conveyance is "SUBJECT TO the provisions of the Declaration and By-Laws of the Condominium recorded simultaneously with and as part of the Declaration, as the same may be amended from time to time by instruments recorded at the Office of the Recorder of Deeds for St. Thomas and St. John."[51]

### E. The organization of the SBCW By-Laws and omissions from the Table of Contents and Organization do not render the arbitration clause invalid.

¶38    Plaintiff relies upon the case of *Piwowar v. Bentz*[52] in support of his argument that SBCW's By-Laws' allegedly convoluted and unclear language concealed the "supposed" arbitration clause "with misdirection and contradictory language—both in the [Table of Contents] and in the Bylaws themselves."[53] Having presided over *Piwowar v. Bentz*, this Court is aware that it is factually distinguishable and is inapplicable to the instant case. The plaintiff, Janusz Piwowar's first language was Polish.[54] He was a handyman who had no prior experience hiring lawyers and was presented with a lengthy retainer agreement which no one to read or explain it to him.[55] Piwowar had no legal training and prior to a single lawsuit in 2013, he never had any exposure to the American legal system and he had never been a party in litigation in any capacity. The retainer agreement was drafted by an attorney he was hiring, and he did not understand it.[56] No one told Piwowar about the arbitration clause.[57] Finally, Piwowar desperately needed a lawyer to respond to the lawsuit that had been filed against him.[58]

¶39    In response to Plaintiff's claims that the arbitration clause is invalid due to the absence of an identifying title or caption, the BOD points to Article X, Section 3 of the By-Laws which state:

> **Section 3. Captions.** The captions herein are inserted only as a matter of convenience and for reference, and in [sic] way define, limit or describe the scope of these By-Laws, or the intent of any provision thereof.[59]

¶40    As further argued by the BOD, the Table of Contents and the written arbitration clause provide reasonable notice that an arbitration clause exists. The Court has reviewed the By-Laws

---

[51] Def.'s Reply in Further Support of Its Mot. to Dismiss & Compel Arb. & Inc. Memo. of Law in Support Thereof 5.

[52] 2020 V.I. Super. 88U, ¶ 59.

[53] Opp. to Def.'s Mot. to Dismiss & Compel Arbitration

[54] 2020 V.I. Super. 88U, ¶ 4

[55] 2020 V.I. Super. 88U, ¶¶ 5,8, 9, 14, 18, 20 through 23.

[56] 2020 V.I. Super. 88U, ¶¶ 17, 18.

[57] 2020 V.I. Super. 88U, ¶ 20.

[58] 2020 V.I. Super. 88U, ¶ 19.

[59] Def.'s Mot. to Dismiss & Compel Arb. Ex B. (in the By Laws there is a footnote to Section 16 which states that this section was amended March 6, 2016.

and finds no evidence that the arbitration clause was hidden or inserted in any deceptive way. The font of all sections are uniform throughout. The requirement of arbitration of disputes between a unit owner and the BOD is not new. In fact, a similar arbitration clause exists in SBCW's By Laws that were recorded in January 1990.[60]

¶41     The BOD is correct that Plaintiff's arguments that the format of the By-Laws, errors in the Table of Contents and scrivener's errors render the arbitration clause invalid or unenforceable are not based upon the prevailing law in this jurisdiction. The arbitration clause is set forth in the same font and font size throughout the By Law. Unlike *Piwowar*, sections are not differentiated with different font size or italicization. The Court finds no basis in law or in fact to support a finding that the arbitration clause was fraudulently concealed or that its terms were obfuscated with convoluted language.

### F. The By Laws' arbitration clause is not unenforceable for prohibiting judicial review.

¶42     Plaintiff argues that the arbitration clause should be invalidated or found not applicable because it does not provide for judicial review. This argument is without merit. Plaintiff fails to provide any binding legal authority from this jurisdiction for his position. The BOD's position is that the arbitration clause "at issue in this matter does not prohibit appropriate appeal."[61] However, the By-Laws attached as Exhibit B to the BOD's Motion to Dismiss and Compel Arbitration do state in the last sentence of Article II, Section 16 that "[t]he resolution reached through arbitration shall be binding and not subject to review." Nonetheless, such a provision does not invalidate the By Laws' arbitration clause because "by consenting to binding arbitration, parties relinquish the legal and procedural safeguards that accompany judicial proceedings."[62]

### G. Failure to specify detailed procedures for all contingencies does not invalidate the arbitration clause.

¶43     Plaintiff's final attack on the arbitration clause lacks sufficient detail. He states that the arbitration clause "lacks sufficient detail to provide for, *inter alia*, who determines arbitrability, what disputes are covered, whether courts handle declaratory judgment actions or tort actions, and how to resolve an impasse in appointing the third arbitrator."[63]

¶44     First, with respect to the failure to specify who determines the issue of substantive arbitrability, the general rule is that "in the absence of an agreement to the contrary, issues of substantive arbitrability ... are for a court to decide and issues of procedural

---

[60] Def.'s Reply in Further Support of Its Mot. to Dismiss & Compel Arb. & Inc. Memo. of Law in Support Thereof Ex. D.

[61] Def.'s Reply in Further Support of Its Mot. to Dismiss & Compel Arb. & Inc. Memo. of Law in Support Thereof 9.

[62] *Gov't of Virgin Islands, Dep't of Educ. v. St. Tomas/St. John Educ. Administrators' Ass'n, Loc. 101, o.b.o. Forde*, 67 V.I. 623, 639 (2017).

[63] Pl.'s Opp. to Def.'s Mot. to Dismiss & Compel Arb. 15-16.

arbitrability, *i.e.*, whether prerequisites such [64]as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.

¶45     The issue of substantive arbitrability has already been decided by this Court: all disputes between a unit owner such as the Plaintiff and the BOD are subject to arbitration. Tort actions are arbitrable. Plaintiff's declaratory judgment claim is subject to arbitration because it calls for a determination of whether the BOD has been complying with the By-Laws.  Second, the arbitration clause provides for the selection of three arbitrators and that the American Arbitration Rules shall be observed.  Arbitration clauses containing far less than the  SBCW's By-Laws have been found to be valid and enforceable.[65] In *McCoy v. Buccaneer, Inc.*[66] the arbitration clause in question stated:

> **9. ARBITRATION**—I agree that any dispute surrounding my employment, including but not limited to the terms of this Agreement shall be settled by binding Arbitration and judgment of the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. This arbitration agreement covers all claims as set forth herein between myself and the Hotel and/or its agents, directors, officers and employees and will continue from the time of the acknowledgement of this agreement by me the undersigned until it is otherwise terminated in writing by the agreement of both parties.

Based upon the foregoing arbitration clause, the District Court rejected the employee's contention that the foregoing clause was invalid because it lacked essential terms. In so ruling, the District Court determined that the clause called for a single arbitrator and that "the absence of an explicit arbitrator-selection method" did not invalidate the arbitration agreement and that stop-gap measures can be found in the Federal Arbitration Act. For example, Title 9 U.S.C. § 5 authorizes a court to intervene to select the arbitrator itself if the parties were unable to agree on one. Similarly, in the case at hand, if the arbitrators selected by Plaintiff and the BOD are unable to agree upon appointing a third arbitrator, they can look to the rules of the American Arbitration Association or petition the Court to appoint the third arbitrator.

### H.  The Court will not dismiss the instant action.

¶46     In support of its Motion for dismissal of actions in which all claims have been referred to mandatory binding arbitration, the BOD relies upon *Whyte v. Bockino*[67] and *Prentice v. Seaborne*

---

[64] Plaintiff's argument that he seeks judicial interpretation of the By Laws and not resolution of a dispute is a meaningless distinction.

[65] *Vegter v. Forecast Fin. Corp.*, 2007 WL 4178947, at *2 (W.D. Mich. Nov. 20, 2007) (a Michigan federal court rejected an almost identical argument to the one Plaintiff makes here. The arbitration clause in that case was a single sentence, which stated that "[a]ny and all disputes between the parties shall be resolved by way of binding arbitration in Okaloosa County, Florida." *Id.* at *1. And despite the absence of various terms the parties could rely upon gap-filling provisions provided by the FAA).

[66] Civ. No. 2015-0033, 2020 WL 5096940 (D.V.I. Aug. 28, 2020).

[67] 69 V.I. 83, 95 (Super. Ct. 2017).

*Aviation.*[68] However, other than stating that this Court has the discretionary authority to dismiss this matter, the BOD offers neither specific nor compelling grounds as to why such discretion should be exercised. Therefore, the matter will be stayed pending arbitration and not dismissed.

¶47      Based on the foregoing, the Court finds that the official SBCW By-Laws, as amended March20, 2021, contain a valid and enforceable arbitration clause and that all of the disputes and disagreements between the Plaintiff the BOD are subject to arbitration. Accordingly, it is hereby

     **ORDERED** that Defendant's Motion to Dismiss and Compel Arbitration and Memorandum of Law in Support Thereof, is **GRANTED** to the extent that the Motion requests the Court to compel arbitration; and it is further

     **ORDERED** that, effective immediately, all disputes, disagreements, grievances, controversies and claims between the Plaintiff and Defendant as expressed in Plaintiff's Verified Complaint filed herein are **REFERRED TO ARBITRATION following the rules of the American Arbitration Association**; and it is further

     **ORDERED** that, effective immediately, all proceedings in the above-captioned action are **STAYED pending arbitration**; and it is further

     **ORDERED** that Defendant's Motion to Dismiss and Compel Arbitration and Memorandum of Law in Support Thereof, is **DENIED to the extent that its seeks dismissal of the above-captioned action**; and it is further

     **ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to Attorneys Michael A. Sheesley, Jennifer Miller Brooks and Chivonne A.S. Thomas.

**DATED:** 11/1/2022

                 **DENISE M. FRANCOIS**
             Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

**BY**

     **DONNA D. DONOVAN**
     Court Clerk Supervisor: 11/3/2022

---

[68] 65 V.I. 96, 113 (V.I. Super. 2016).